## DECEMBER TERM, 1799.

HENRY HUNTER surviving partner of WILLIAM ALLEN, Sir CHARLES
RAYMOND and VERE, all deceased, *against* SAMUEL BLODGET, who
survived SAMUEL GILMAN.

If a bill of exchange be drawn in favor of a fictitious payee, and that circumstance be
known as well to the acceptor as the drawer, and the name of such payee be indorsed
on the bill, an innocent indorsee for a valuable consideration, may recover on it against
the acceptor, as on a bill payable to bearer.

ACTION on a bill of exchange, dated Manchester, March 3d 1788,
drawn by Livesey, Hargreave and Co. on the defendants, mer-
chants in London, in favor of Thomas Hallowel or order, for 927*l.*
5*s.* sterling, payable at seventy days sight. An indorsement pur-
porting to be of Hallowel, appeared on the bill, which was accepted
by Blodget and Co., and as appeared by the protest, fell due on
the 15th May 1788.

· The plaintiffs' declaration contained three counts. The first
count stated it as a common bill of exchange, payable to Thomas
Hallowel or order, and that Hallowel indorsed it to the plaintiffs.
The second count stated the bill as payable to bearers, and that the
plaintiffs were the bearers. The third was a general count for
money had and received to the plaintiff's use. [The first and sec-
ond counts pursued the forms of the fourth and fifth counts, in H.
Bla. 573, 574.

It appeared on the trial, by sundry depositions taken under a
commission directed to Great Britian, that Thomas Hallowel was
a fictitious payee ; that the house of Livesey, Hargreave and Co.,
frequently drew bills of exchange, and to a great amount, payable to
persons who did not exist, in order to give them a greater currency,
which their clerks afterwards indorsed, that Blodget and Co. per-
fectly well knew of this practice, and on their purchase of Merchan-
dise from Livesey and Co., often paid for the same by their accep-
tances of such bills ; and that the plaintiffs came to the possession
of the bill in the common and ordinary course of trade, without
knowledge of the payee's being fictitious.

The plaintiff gave credit for two dividends, received from the as-
signees of Livesey and Co. who had become bankrupt, amounting
to 4*s.* 3*d.* in the pound.

Mr. Rawle for the plaintiff, relied on the case of Minet and

Fector v. Gibson and Johnston, determined in the King's Bench in 1789, on a bill of exchange of the same nature, drawn also by Livesey and Co. 3 Term Rep. 481, which judgment was afterwards affirmed in the House of Lords in 1791, on hearing the opinions of all the judges. 1 H. Bla. 569. He insisted, that the plaintiff was entitled to a verdict on the second count, wherein he declared as bearer of the bill.

Mr. Morgan for the defendant, questioned the authority of those decisions, the same having taken place since the American revolution, but submitted the case to the court.

By the court. No possible difficulty can exist respecting the justice of the plaintiff's demand; nor can any reasonable person hesitate to affirm, that the improper practices of Livesey, Hargreave and Co. so highly reprobated in the commercial world, but known to, and co-operated in by, Blodget and Gilman, shall not predjudice the *bona fide* holders of their paper, thus put in circulation, without any participation on the part of the latter in this system of speculation. The defendant's house frequently paid for their goods by their acceptances of such bills of exchange, and well known of the pernicious system thus carried on, so highly injurious to fair commerce. 1 H. Bla. 618, 619.

But it is objected, that the plaintiff is not entitled to recover at law, the present bill not being payable to Thomas Hallowel or bearer, but to his order; and that it is requisite, that the indorsee of a bill of exchange payable to order, should in deriving his title, prove the handwriting of the first indorser. This certainly is the general rule; (1 Salk. 130, 2 Ld. Raym. 810, 3 Term Rep. 181,) but it is inapplicable here, because impossible under the circumstances of the case. The point has been settled by all the judges in England, and it has been held by a great majority of them, that on a declaration by the plaintiff as the bearer of such a bill, he may legally recover from the acceptor, in the case cited by the plaintiff's counsel.

The adverse counsel however has urged, that the adjudications of the courts of Westminster since 1776, are no authorities in our courts. And it certainly must be granted, that such determinations and the opinions of the judges in England, (1 Dall. St. Laws 722, § 2,) previous to the declaration of American independence, are necessarily more forcible and binding on us, than those subsequent thereto. Yet those latter resolutions have, always been received as evidence of the law here, considered as the opinions of wise and scientific men, on the particular subjects treated of, though not merely of themselves authoritative. And

where such latter determinations appear to be founded on sound legal principles and good sense, and are applicable to the general policy of the union and our local situation, they deservedly merit respect. In all these points of view the court unanimously regard the decision of Minet and Fector *v.* Gibson and Johnston, and fully adopt it as our own. The plaintiff therefore is entitled to a verdict, deducting the sum received from the assignees of Livesey and Co. But the whole transaction having been in England, the plaintiff can only claim at the rate of 5 per cent. for interest, per annum, agreeably to the laws of Great Britain. The *lex loci* of the contract must govern in matters of this nature. 2 Fonbl. 442, and the cases their cited.

Verdict *pro quer.* for 2021*l.* 16*s.* 5*d.* currency, damages.